IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINNIE SHARPER, JR., | No. C 07-0351 JSW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| ROBERT AYERS, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

The petition is directed to a revocation of probation after a contested hearing. The court found petitioner to be in violation of his probation and on October 28, 2003, ordered that he serve the previously suspended ten year term. Petitioner appealed the revocation and sentence to the California Court of Appeal, which denied the appeal in 2004. The Supreme Court of California denied Petitioner's petition for review in 2005. He also filed one state habeas petition; it was denied by the California Supreme Court on September 20, 2006.

Petitioner does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

On January 25, 2000, appellant punched his girlfriend several times during an argument. When the police spoke with the girlfriend the following day, both her eyes were discolored and one eye was swollen shut.

Based on these facts, an information was filed charging appellant with aggravated assault. (Pen.Code,[FN1 All further section references will be to the Penal Code.] § 245, subd. (a)(1).] The information also alleged that appellant had inflicted great bodily injury on his victim, (§ 12022.7, subd. (e)) that appellant had eleven prior strikes, (§ 667, subds.(b)-(I)) and that appellant had served two prior prison terms (§ 667.5, subd. (b).)

The case was resolved through negotiation. Appellant pleaded no contest to aggravated assault and admitted the great bodily injury and prior prison term allegations. In exchange, the strike allegations were dropped and the court imposed a ten-year suspended sentence.

In July 2002, a petition to revoke appellant's probation was filed alleging he had failed to appear for scheduled office visits, had not enrolled in a domestic violence class, and that his whereabouts were unknown. The court found the allegations to be true, but reinstated probation on modified terms.

In February 2003, a second petition to revoke was filed alleging appellant had failed to appear for scheduled office visits, failed to enroll in a domestic violence class, that his whereabouts were unknown, and that appellant had admitted to ongoing drug use. The court found the allegations true but reinstated probation on the condition that appellant attend and complete a six-month residential drug program. The court warned appellant that if he failed to complete the program successfully, "somebody's going to want to impose that State Prison suspended sentence...."

In June 2003, a third petition to revoke was filed alleging, inter alia, that appellant had been expelled from his rehabilitation program for forging documents, had failed to reenroll in a new program as had been ordered by his probation officer, and had failed to enroll in a domestic violence prevention program.

The court found the allegations of the petition to be true after a contested hearing.

On October 28, 2003, the court declined to reinstate probation and sentenced appellant to the ten-year term that had been imposed previously.

(Ex. B at 1-2.)[1]

The petition to revoke probation contained these three grounds that the court found to be true: (1) Petitioner was expelled from the Salvation Army Adult Rehabilitation Center for forging signatures to show attendance at Narcotics Anonymous meetings; (2) he failed to re-enroll in a residential drug treatment program as required by the probation

---

[1] Citations to "Ex." are to the record lodged with the court by the Attorney General.

2

officer; and (3) he failed to enroll in a domestic violence program as ordered by the court. (Ex. A at 102; Ex. I at 61-62.)

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322

3

at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for habeas relief, petitioner asserts that his counsel was ineffective and that the ten-year sentence was a violation of the Eighth Amendment's prohibition of cruel and unusual punishments.

### I. Ineffective Assistance

Petitioner contends that his counsel was ineffective in three ways: (1) counseling him prior to sentencing to confess having forged signatures; (2) disparaging him in argument at sentencing; and (3) failing to investigate sufficiently to discover exculpatory evidence.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Similarly, a court need not determine whether counsel's performance was

4

deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

One issue in the revocation proceeding was whether Petitioner had forged signatures on slips that confirmed he had attended Narcotics Anonymous meetings. At the hearing Petitioner testified that he did not. (Ex. I at 55.) In revoking probation, the court found true the allegation that Petitioner was expelled for forging signatures, and also found by a preponderance of the evidence that the signatures "were, in fact, forged." (*Id.* at 61-62.) At sentencing, Petitioner apologized for not having been honest when he denied forging the signatures. (*Id.* at 66-67.)

Petitioner contends that his lawyer "coerced" him to say he had lied when he denied forging the signatures. (Pet. 8A-D.) The coercion apparently consisted of telling him that things would go better for him if he admitted lying. (*Id.* at 8C.) Petitioner contends that this was ineffective assistance.

The trial court had already found that Petitioner forged the documents by the time he apologized. At worst, the court might discount the apology as too late and as what it was, an attempt to curry favor; at best, it might help. Neither of these things disadvantaged Petitioner. It therefore was not deficient performance for counsel to advise Petitioner to say he was sorry for having lied.

Petitioner also contends that it was ineffective for counsel to disparage him in counsel's argument. This is what counsel said:

> [Defense Counsel]: Your Honor, what I'd like to see happen in this case, and I realize that it would be very difficult for anybody to find fault in the Court for imposing a suspended prison sentence after repeated failures, which obviously is the case here.
>
> I would point out that those failures are of minor, almost harmless nature, that is almost harmless if there wasn't ten years SPS.
>
> There are things like this forged signature business, and not actual cases that have precip[i]tated the problem that Mr. Sharper has had with probation.
>
> I'd like to just be very blunt. And I don't think that this is offering ineffective assistance of counsel because I think that even though what I have to say may not be—may not sound like I'm speaking for Mr. Sharper,

5

that this case is too serious for me to do the standard "my client's a great guy," and "gosh, golly, if you just do this, everything is going to work out" type of speech.

I don't think that's going to fly, so I want to say that I understand that Mr. Sharper has always tried to get away with whatever he could get away with.

If Mr. Sharper felt that forged signatures were going to be accepted, he was going to try that. That's exactly what he did in this last case.

That I do see as a very serious problem. The fact that he forged three signatures frankly is not a big deal to me.

But I guess reasonable people can differ. It's the pattern of behavior that I think that's led Vinnie to where he is today, a grown man locked up in a cage pleading not to be sent away to prison for 10 years.

And it's just the little things, but they're over and over. And testing the limits just like a teenager tests the limits.

And I've got two of them, your Honor. I'm well aware of how they work on you. And it's very unfortunate that he could have reached the age, I think he's 40 now, or 41, where this is still going on. But I will tell you a couple things.

First is this situation, and this day, this sentencing has scared the hell out of him. That's number one. And I think he needs that.

I think it's possible that were you to give him 10 years, that he would go and do the time, a considerable amount of time, and he will come out a better person having learned his lesson.

We can't really predict the future and what effect that would have. I do think it's also possible, and in fact more likely than not, though I'm hardly willing to give you a guarantee, that allowing him to finish what he should have finished, to wit, the Oakland Salvation Army Program, which is very happy to take him back, would also have the desired effect.

That is to say although for the last three years Mr. Sharper hasn't committed crimes or anything like what landed him in this trouble in the future.

I think that he would successfully complete probation without this stupid little stuff. This testing of limits, this getting away with what you can get away with.

I think that it's very simple for us to say listen, you've got 10 years suspended. But it's not clear to me that up until recently that Mr. Sharper really got it.

I would also like to say that obviously Mr. Sharper is more than willing to cooperate in any kind of sentence that doesn't involve going to prison for 10 years.

In other words, waiving of time, agreeing to whatever, whatever kind of

flexibility the Court needs or want to not send him to prison for 10 years, would be appreciated and, of course, he'd offer any kind of cooperation that was needed in that regard.

So I think the best argument for putting him in prison is he made an agreement and he violated the agreement.

It's true the violation was very minor. But then he was given another chance and he violated the agreement and it's true that there was a penny ante violation, but he was given another chance, and he violated the agreement, this time with some forged signatures.

Once again, minor. There's a point at which people became—it's not just fed up. It's almost a sense of outrage.

How many chances can we give the guy without just slamming the door shut in his face. And I think that I would be moved were I a Judge and there were three or four years suspended over Mr. Sharper's head, to shut that door.

I think the original plea is without criticizing anyone involved with this, is just I don't know how you sentence a guy to 10 years on a probation violation when he hasn't committed a new crime.

I know it's technically possible. I know you might do it in the next five minutes, but it seems to me almost a deterrent to prison.

I mean I would feel personally given the circumstances of the violation that 10 years is just not appropriate, even though there is this urge for those of us who follow the rules to impose punishment on those who weren't, especially when we give them chances.

If I agreed to successfully complete a program so that you wouldn't sentence me to 10 years in prison, I would successfully complete that program. But, you know, people with the best of intentions sometimes make promises, and I don't know why, whether it's because the way you were raised, because of genetics, because you got dropped on your head when you were a kid or whatever, but there are a lot of people, and we [see] them every day, who have a difficult time following through on what seems to the rest of use to be very clear guidelines.

Mr. Sharper is one of those people. But that's not to say that he can't follow through, and that's not to say that he can't successfully complete probation.

I'm convinced that he could, given the enormity of the sentence that's facing him. I would ask that you send him back to do what he should have done several months ago, which was successfully complete the Oakland Salvation Army project and reinstate his probation.

And I'm not going to use the words "give him another chance." Just [sic] I would just reiterate that I think he'll be successful.

(Ex. I at 68-72.)

The only evidence why counsel took this tack in argument is his own statement that he believed the facts of Petitioner's repeated probation failures were too serious for his usual speech praising his client. That is, it was a tactical decision. *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981) (difference of opinion as to trial tactics does not constitute denial of effective assistance). Furthermore, it was a good one – it was not deficient performance. Petitioner, who had eleven prior strikes and two prior prison terms, had been given two previous chances to avoid having to serve the prison sentence and failed. Given the very unfavorable circumstances, counsel wisely chose to concede Petitioner's immature behavior; express his dismay at Petitioner's failure to do better when facing a ten year prison term; and argue that despite this, the ten year sentence simply was too extreme a punishment for fairly minor violations. It was not ineffective assistance.

Petitioner also contends that counsel failed to adequately investigate the case, in that he did not contact the persons designated to sign the slips he was accused of forging and did not hire a handwriting expert to determine if the signatures were forged. (Pet. at 8F.)

Petitioner has failed to provide any evidence what such an investigation would have discovered, and for that reason has failed to show that counsel's investigation was deficient. Furthermore, the trial court found true three of the allegations of the revocation petition, and there is nothing in the petition disputing that Petitioner was ejected from the Salvation Army program, that he failed to enroll in a substitute residential drug treatment program, and that he did not enroll in a domestic violence prevention program. Because Petitioner had failed to comply with probation requirements as to these points, his probation would have been revoked even if counsel had been able to show that ths slips were not forged, and any failure to investigate could not have prejudiced Petitioner.

None of Petitioner's ineffective assistance claims have merit.

///

///

## II. Eighth Amendment Claim

Petitioner claims that then ten year sentence was cruel and unusual punishment.

The Eighth Amendment to the United States Constitution provides that there "shall not be . . . cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years."). The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur under a recidivist sentencing statute. *Ewing*, 538 U.S. at 25, 29-30. In determining whether a sentence is grossly disproportionate under a such a statute, the court looks to whether the "extreme sentence is justified by the gravity of [the individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

In *Andrade*, the Supreme Court upheld a Three Strikes sentence of two consecutive twenty-five-to-life terms for a recidivist convicted of stealing approximately $150 worth of videotapes. *Andrade*, 538 U.S. at 66, 77. Andrade had a criminal history of petty theft, burglary, and transportation of marijuana. *Id.* at 66. Similarly, in *Ewing*, the Court upheld a Three Strikes sentence of twenty-five years to life for a repeat felon convicted of felony grand theft of three golf clubs worth nearly $1,200. *Ewing*, 538 U.S. at 18-19, 30-31. Ewing had a criminal history of theft, battery, burglary, possession of drug paraphernalia, illegal firearm possession, robbery, and trespass. *Id.* at 18-19. By contrast, the Ninth Circuit in *Ramirez* held that a Three Strikes sentence of twenty-five years to life on petty theft with prior convictions was grossly disproportionate to the crime. *Ramirez*, 365 F.3d at 767. Ramirez's prior criminal history consisted of two convictions for second-degree robbery obtained through a single guilty plea, for which his

1 total sentence was one year in county jail and three years of probation. *Id.* at 768. The
2 robberies were "nonviolent" shoplifting crimes in which the "force" used was when a
3 third party drove the getaway car over the foot of a grocery store security guard and when
4 Ramirez pushed a K-mart security guard out of his way as he fled the store. *Id.*

Here, Petitioner's underlying conviction was for aggravated assault, for which he received four years, with a four-year enhancement for personal infliction of great bodily injury and two one-year enhancements for having served two prior prison terms. (Ex. A at 128.)

Aggravated assault is much more serious than the thefts in *Andrade* and *Ewing*. In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, however, courts look not only at the most recent offense, but also at the petitioner's criminal history. *Ramirez*, 365 F.3d at 768. Unlike in *Ramirez*, where Ramirez's two prior strikes were nonviolent shoplifting crimes, Petitioner's prior offenses included grand theft from a person, ten counts of first degree burglary, and robbery. (Ex. A at 121.) The gravity of Petitioner's most recent offense and his criminal history justify the ten-year sentence.

On this record, the state court's rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

**CONCLUSION**

The petition for a writ of habeas corpus is DENIED. A certificate of appealability is DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: February 19, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

G:\JSWALL\Pro-Se Prisoner\2007\Sharper351.RUL.wpd

10

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

VINNIE SHARPER JR,

        Plaintiff,

  v.

ROBERT AYERS et al,

        Defendant.

Case Number: CV07-00351 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 19, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Vinnie Sharper
V13802
San Quentin State Prison
FH002L
San Quentin, CA 94974

Dated: February 19, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk